**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  11/7/2022
```

CLYVE SHAW and KENARDRO PRESS, on
behalf of themselves and those
similarly situated,

                    Plaintiffs,

          - against -

HORNBLOWER CRUISES & EVENTS, LCC,

                  Defendant.

**21 Civ. 10408 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

      Plaintiffs Clyve Shaw ("Shaw") and Kenardro Press ("Press") (collectively, "Plaintiffs") bring this putative class action, on behalf of themselves and all others similarly situated, against defendant Hornblower Cruises & Events, LLC ("Hornblower" or "Defendant"). Plaintiffs allege that Defendant violated the federal Worker Adjustment and Retraining Notification Act[1] (the "federal WARN Act" or "WARN Act"), the New York State Worker Adjustment and Retraining Notification Act[2] (the "New York WARN Act"), and the Illinois Worker Adjustment and Retraining Notification Act[3] (the "Illinois WARN Act"), by failing to provide the required timely notices to its employees prior to closing a site of

---

[1] 29 U.S.C. §§ 2101-2109.

[2] N.Y. Lab. L. § 860.

[3] 820 Ill. Comp. Stat. Ann. 65/1.

employment and conducting a mass layoff. (See "Second Amended Complaint" or "SAC," Dkt. No. 27.)

Plaintiffs purport to represent three classes: (1) "All former Hornblower employees throughout the United States who were not given a minimum of 60 days' written notice of termination and whose employment was terminated as a result of a 'mass layoff' or 'plant closing' as defined by the federal [WARN] Act of 1988"; (2) "All former Hornblower employees throughout New York State who were not given the 90 days' written notice of termination and whose employment was terminated as a result of a 'mass layoff' or 'plant closing'" as defined by the [New York WARN Act]"; and (3) "All former Hornblower employees throughout the State of Illinois who were not given a minimum of 60 days' written notice of termination and whose employment was terminated in 2020, as a result of a 'mass layoff' or 'plant closing' as defined by the Illinois [WARN Act]." (SAC ¶ 13.)

Consistent with the Court's Individual Practices, Defendant filed a pre-motion letter on April 18, 2022, indicating that it intended to file a motion to partially dismiss Plaintiffs' complaint or, in the alternative, partially strike class certification. (See Dkt. No. 28.) Plaintiffs responded by letter, opposing Defendant's proposed

motion, on April 22, 2022. (See Dkt. No. 29.) Defendant and Plaintiffs subsequently filed letter replies on April 29, 2022 and May 4, 2022, respectively. (See Dkt. Nos. 31, 32.)

Pending before the Court, after the parties exchanged their pre-motion letters, is Defendant's motion, filed on July 15, 2022, to partially dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") or, in the alternative, partially deny class certification on a preemptive basis pursuant to Federal Rule of Civil Procedure 23(d)(1)(D) ("Rule 23(d)(1)(D)"). (See "Motion," Dkt. No. 37; "Memorandum of Law" or "MOL," Dkt. No. 38.) Plaintiffs filed their opposition to Defendant's motion on July 22, 2022 (see "Opposition," Dkt. No. 41), and Defendant filed its reply on July 29, 2022 (see "Reply," Dkt. No. 43). On October 18, 2022, Plaintiffs filed a letter, notifying the Court of supplemental authority relevant to the pending motion (see Dkt. No. 52), and Defendant filed a reply letter on October 28, 2022 (see Dkt. No. 56). For the reasons set forth below, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

## I.   **BACKGROUND**

A. FACTUAL BACKGROUND[4]

### 1. The Federal WARN Act

The federal WARN Act[5] seeks to protect employees by prohibiting employers of 100 or more employees from ordering "a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order." 29 U.S.C. § 2102(a). Some exceptions exist. An employer may shut down a worksite before the conclusion of the 60-day period if the employer is faced with worksite closings due to faltering companies, "business circumstances that were not reasonably foreseeable," or "any form of natural disaster." 29 U.S.C. § 2102(b)(3). However, the employer must still "give as much notice as is practicable." Id.

The WARN Act defines a plant closing as the shutdown of a single site of employment that "results in an employment

_____

[4] Except as otherwise noted, the factual background derives from the SAC and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See infra Section II.

[5] The New York and Illinois WARN Acts closely mirror the federal WARN Act with minor differences. The New York WARN Act requires 90 days' notice, and 25 or more aggrieved employees, exclusive of part-time employees. See N.Y. Lab. L. § 860. And an "employer" employs more than 50 full-time employees. See id. Like the federal WARN Act, the Illinois WARN Act requires 60 days' notice, but a threshold of 25 or more aggrieved employees exclusive of part-time workers. 820 Ill. Comp. Stat. Ann. 65/1. Further, in Illinois, an employer is one with at least 75 full-time employees. See id. Unless specifically noted, the Court will primarily reference the federal WARN Act with the intention that the discussion will apply similarly to the New York and Illinois WARN Acts.

4

loss . . . during any 30-day period for 50 or more employees excluding any part-time employees." 29 U.S.C. § 2101(a)(2). A "mass layoff," on the other hand, "results in an employment loss at the single site of employment during any 30-day period for -- (i)(I) at least 33 percent of the employees (excluding any part-time employees); and (II) at least 50 employees (excluding any part-time employees); or (ii) at least 500 employees (excluding any part-time employees)." 29 U.S.C. § 2101(a)(3).

An employment loss is an "(i) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (ii) a layoff exceeding 6 months, or (iii) a reduction in hours of work of individual employees of more than 50 [percent] during each month of any 6-month period." 29 U.S.C. § 2101(a)(6).

If an employer fails to provide the required notice when laying off a threshold number of employees, the employer is liable to "each aggrieved employee who suffers an employment loss" as a result of the plant closing or layoff. 29 U.S.C. § 2104(a)(1). Aggrieved employees are entitled to back pay and benefits, all calculated for the period of the WARN Act violation up to a maximum of 60 days. See id. The remedies

provided for in 29 U.S.C. § 2104 are the "exclusive remedies" for violating the WARN Act. 29 U.S.C. § 2104(b).

   2. Plaintiffs' Terminations

   Named Plaintiffs Clyve Shaw and Kenardro Press are former employees of defendant Hornblower Cruises & Events, LLC. (See SAC ¶ 2.) Shaw worked as a sales manager for Defendant at its Chelsea Piers, Pier 62 location in New York, New York ("Pier 62"). Press worked as a deckhand for Defendant at its Navy Pier location in Chicago, Illinois ("Navy Pier"). Defendant Hornblower Cruises is a corporation authorized to conduct business in New York, Illinois, and other states and maintained an office or facility at Pier 62 in New York, where Shaw worked, and at Navy Pier in Chicago, where Press worked. (See id. ¶¶ 19, 22.)

   On March 18, 2020, Shaw was verbally notified that he was being furloughed, effective immediately. (See id. ¶¶ 21, 24.) In July and August 2020, Defendant recalled Shaw to work for several weeks. (See id. ¶ 25.) On August 17, 2020, Defendant terminated Shaw, informing him by letter that he was being "plac[ed] . . . on layoff, effective on August 17, 2020" and that his layoff would be permanent. (Id. ¶¶ 26, 91.) In March 2020, Press was informed by his supervisor that he was not to come into work. (See id. ¶¶ 23, 27.) Press

neither received formal notice of his furlough nor did he receive any notice that his employment was permanently terminated. (See id. ¶¶ 28-29.)

### 3. Defendant's Layoff Process

The SAC alleges that Defendant employed hundreds of employees in New York and thousands across the country (SAC ¶¶ 20, 79), and that Defendant terminated hundreds of those employees without cause and without the advance notice required by the federal and state WARN laws. (See id. ¶ 30.) Plaintiffs further allege that at all relevant times, Defendant employed 100 or more employees, exclusive of part-time employees,[6] or employed 100 or more employees who, in the aggregate, worked at least 4,000 hours per week exclusive of hours of overtime within the United States. (See id. ¶ 33.)

According to the SAC, in 2020, Defendant implemented "multiple mass layoffs," each of which resulted in the loss of employment for more than 50 employees, excluding part-time employees, at "multiple sites of employment." (Id. ¶ 34.) On

---

[6] Under the federal WARN Act, part-time employees are those who work fewer than six of the 12 months prior to the date notice is required to be given or who work fewer than an average of 20 hours per week during the 90-day period prior to the date that notice is required to be given. Part-time employees are not part of the calculation in determining whether WARN notice is due. See 29 U.S.C. §§ 2101(a)(8), 2102(d).

August 13, 2020, Defendant allegedly notified the New York State Department of Labor that it had permanently laid off 481 employees at Pier 62 in New York. (See id. ¶ 61.) In an email exchange in August 2020, a Hornblower employee confirmed that Defendant had laid off more than 481 of the 539 employees who worked at Pier 62. (See id.) Plaintiffs assert that Shaw did not receive written notice at least 90 days in advance of the termination of his employment nor did he receive as much notice as was practicable under the circumstances. (See id. ¶¶ 62-63.)

Additionally, the SAC alleges that in September 2020, Defendant laid off or terminated 296 employees at Navy Pier in Chicago without advance notice. (See id. ¶ 35.) In a letter dated September 15, 2020, Defendant notified the WARN Unit of the Illinois Department of Labor and other government officials that effective September 10, 2020, 296 employees were "being permanently laid off" as a result of the closure of its Navy Pier site. (Id. ¶ 36.) In a sworn declaration provided to Illinois government officials, Hornblower's Vice President of Human Resources, Genell Parker ("Parker"), claimed that Defendant did not provide notice before implementing the layoffs because it was the result of "unforeseeable business circumstances." (Id. ¶¶ 37-38.)

8

Parker's declaration further noted that the September 2020 notice was provided "as soon as was practicable under the relevant circumstances." (Id. ¶ 39.)

In the SAC, Plaintiffs also identify cities in California where Defendant allegedly laid off or terminated its employees without the requisite advance notice. For example, Plaintiffs identify a site in Newport Beach, California where at least 97 employees of Defendant were permanently laid off or terminated without notice. (See id. ¶¶ 40-41.) Plaintiffs also identify sites in Marina del Rey, San Francisco, and San Diego, California, where at least 69, 139, and 65 employees of Defendant, respectively, were laid off. (See id. ¶¶ 42-47.) Plaintiffs allege that Defendant provided notice of these facts to California government officials only in August 2020. (See id.)

Plaintiffs contend that these "mass layoffs resulted in the loss of employment for at least 33% of the employees at multiple single sites of employment excluding Part-Time Employees." (Id. ¶ 50.) They further allege that Defendant's employees "did not receive written notice at least 60 days in advance of the termination of their employment, nor did they receive as much notice as practicable under the circumstances." (Id. ¶ 53.)

B. <u>THE PARTIES' ARGUMENTS</u>

On July 15, 2022, Defendant filed its Motion and Memorandum of Law, contending that dismissal of Plaintiffs' putative class claims related to sites where Plaintiffs did not work, or that, in the alternative, preemptive denial of class certification as to those sites is warranted because: (1) Plaintiffs' allegations that any WARN Act violation was triggered at work locations other than their own are insufficiently pled and (2) Plaintiffs' individual WARN Act claims cannot be common with or typical of WARN Act claims of employees at other sites. (<u>See</u> MOL at 1.)

Plaintiffs counter that the SAC pleads valid class claims under the WARN Act and that the facts that Defendant demands from Plaintiffs are only within Defendant's record. (<u>See</u> Opposition at 1.) Plaintiffs further argue that it is premature for the Court to consider questions of class certification at the pleading stage as Plaintiffs have not yet had an opportunity to develop an evidentiary record through discovery. (<u>See</u> <u>id.</u> at 2.)

Defendant disagrees, contending that under the plausibility pleading standard established in <u>Ashcroft v. Iqbal</u>, Plaintiffs' claim that WARN notice obligations were triggered at sites other than Pier 62 in New York and Navy

10

Pier in Chicago where Plaintiffs were employed is conclusory and does not contain enough facts to find the claim plausible. (See Reply at 1 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).) Defendant further argues that there are no common or typical questions of law or facts among employees who worked at different sites. (See MOL at 2-3; Reply at 2-3.) Defendant contends that because the pleadings make clear that the requirements for class certification cannot be met, Plaintiffs' class allegations should be stricken before discovery takes place. (See MOL at 2; Reply at 3.)

## II.   **LEGAL STANDARD**

A. RULE 12(b)(6)

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court should not dismiss a complaint for failure to state a claim if the factual

allegations sufficiently "raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555. However, a complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.

In resolving a Rule 12(b)(6) motion, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>In re Initial Pub. Offering Sec. Litig.</u>, 383 F. Supp. 2d 566, 573-74 (S.D.N.Y. 2005) (internal quotation marks omitted), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Tenney v. Credit Suisse First Boston Corp. Inc.</u>, No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006); <u>accord</u> <u>In re MF Glob. Holdings Ltd. Sec. Litig.</u>, 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013). In this context, the Court must draw reasonable inferences and resolve any doubts in favor of the non-moving party. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152 (2d Cir. 2002). However, the requirement that a court accept the factual allegations in the claim as true does not extend to legal conclusions. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.

Finally, in adjudicating a motion to dismiss, a district court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint

or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." <u>Leonard F. v. Israel Disc. Bank of New York</u>, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

B. <u>RULE 23(d)(1)(D)</u>

Rule 23(d)(1)(D) allows courts to "require that the pleadings be amended to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(d)(1)(D). Ordinarily, such a determination follows a motion for class certification, but the defendant "need not wait for the plaintiff to act," and may, as here, "move for an order denying class certification" before the plaintiff has filed such motion. <u>Fedotov v. Peter T. Roach & Assocs., P.C.</u>, 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005) (citing 5-23 <u>Moore's Federal Practice</u> 3d § 23.82). Such motions to strike "may be entertained if the inquiry would not mirror the class certification inquiry and if the resolution of the motion is clear." <u>Duran v. Henkel of Am., Inc.</u>, 450 F. Supp. 3d 337, 357 (S.D.N.Y. 2020) (citing <u>Talarico v. Port Auth. of N.Y. & N.J.</u>, 367 F. Supp. 3d 161 (S.D.N.Y. 2019).

However, motions to strike are generally disfavored in this district. <u>See</u> <u>Chenensky v. New York Life Ins. Co.</u>, No. 07 Civ. 11504, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27,

2011). Courts have explained that "a determination whether the Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination." Bernstein v. Cengage Learning, Inc., No. 19 Civ. 7541, 2020 WL 5819862, at *6 (S.D.N.Y. Sept. 29, 2020) (quoting Mazzola v. Roomster Corp., 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) (collecting cases)). Ultimately, "[w]hether to grant or deny a motion to strike lies within the court's sound discretion." Garcia v. Execu|Search Grp., LLC, No. 17 Civ. 9401, 2019 WL 689084, at *1 (S.D.N.Y. Feb. 19, 2019) (citations omitted).

When the issues are "plain enough from the pleadings," they may be resolved without further discovery. See Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982). In essence, if the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met," the Court may strike the class allegations at any practicable time after the suit has been filed. Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 n.30 (3d Cir. 2011); see also Camacho v. City of New York, No. 19 Civ. 11096, 2020 WL 4014902, at *3 (S.D.N.Y. July 16, 2020). And the plausibility standard

will generally apply to such motions.[7] <u>See</u>, <u>e.g.</u>, <u>Talarico</u>, 367 F. Supp. 3d at 173 ("[A] motion to strike class claims at the pleading stage can succeed where the claims fail to state a plausible entitlement to relief on behalf of the putative class members.").

### III. <u>DISCUSSION</u>

Before the Court is Defendant's motion to dismiss the SAC in part or, in the alternative, partially deny class certification on a preemptive basis. The Court hereby grants the motion to partially dismiss the SAC and denies the motion to preemptively strike class allegations.

A. <u>MOTION TO PARTIALLY DISMISS THE SAC</u>

To state a claim under the federal WARN Act, a plaintiff must allege that: "(1) he or she was employed by an 'employer' (2) who failed to provide at least 60 calendar days advance notice of (3) a 'plant closing' or a 'mass layoff' which resulted in (4) an 'employment loss.'" <u>Assif v. Titleserv,</u>

---

[7] The Court acknowledges that some courts in this district have declined to apply this standard. <u>See</u>, <u>e.g.</u>, <u>Garcia</u>, 2019 WL 689084, at *3 (declining to apply the plausibility standard "because [the defendant's] motion does not test the legal sufficiency of the underlying claims, but the propriety of the procedural vehicle of a class action"). But that approach seems to be the minority, as numerous courts have applied the plausibility standard to motions to strike such as the instant one. <u>See</u>, <u>e.g.</u>, <u>Duran</u>, 450 F. Supp. 3d at 358 (applying the plausibility standard); <u>Passelaigue v. Getty Images (US), Inc.</u>, No. 16 Civ. 1362, 2018 WL 1156011, at *10 (S.D.N.Y. Mar. 1, 2018) (same); <u>Kassman v. KPMG LLP</u>, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) (same).

Inc., No. 11 Civ. 3203, 2014 WL 12843780, at *6 (E.D.N.Y. Aug. 25, 2014) (citing Warshun v. N.Y. Cmty. Bancorp, Inc., 957 F. Supp. 2d 259, 267 (E.D.N.Y. 2013)).

In the Motion and Memorandum of Law, Defendant argues that Plaintiffs failed to adequately plead that any WARN Act applies to any sites of employment other than Pier 62 and Navy Pier, the jobsites where Shaw and Press were employed. (See MOL at 1.) Defendant does not challenge the adequacy of the pleadings with respect to Pier 62 and Navy Pier. Instead, Defendant's argument is that Plaintiffs' allegations about locations other than their individual sites of employment are conclusory and fall short of the plausibility pleading standard required under Iqbal. Plaintiffs assert that 97 employees were permanently laid off or terminated without notice at a site in Newport Beach, California; that 69 employees were laid off at a site in Marina del Rey, 139 employees at a site in San Francisco, and 65 employees at a site in San Diego. (See SAC ¶¶ 40-47.) Defendant's issue with these figures is that they are the only numbers that Plaintiffs provide in support of their allegation that Defendant's layoffs "resulted in the loss of employment for at least 33% of the employees at multiple sites of employment." (MOL at 1-2; SAC ¶ 50.)

16

To support its argument that greater factual specificity is required, Defendant cites only to Guippone, a case concerning a defendant corporation that purchased a company and subsequently terminated the employees of that company without written notice as required under the federal WARN Act. Guippone v. BH S & B Holdings LLC, 681 F. Supp. 2d 442 (S.D.N.Y. 2010). In Guippone, the defendant argued that the terminated employees were not entitled to notice as they were part-time employees under WARN, having not been employed by the parent company for the requisite period of time to be owed WARN notice. Id.

On a motion to dismiss, the Guippone court found that the plaintiff's complaint was a "model of a deficient pleading" as the complaint had glaring omissions. Id. at 446. For example, the plaintiff had failed to allege how long he himself was employed at the facility operated by the defendant, whether he was employed for six of the twelve months that WARN notice would have been due, how many people worked at the two facilities mentioned in the complaint, or whether there were other facilities. Id. Thus, the court held that the plaintiff failed to adequately allege facts supporting the claim that WARN notice was owed to even the plaintiff's own site of employment.

17

Here, in demanding greater factual allegations from Plaintiffs, Defendant cites Guippone for the proposition that "the duty to give WARN Act notice is a function of the number of full-time employees who worked at a particular facility." (MOL at 2 (citing Guippone, 681 F. Supp. 2d at 446).) That in stating a WARN Act claim, at minimum, certain threshold facts must be provided, such as whether the employees at those other sites are qualifying, non-part-time employees and whether those employees represent at least 33 percent of the countable workforce at those sites, as required by the WARN Act. (See id. at 2.)

If the guidance from the Guippone court is to be taken literally, the Court requires a higher level of factual specificity only as to Plaintiffs' own sites of employment but does not necessarily require that particularity concerning the facilities at which Plaintiffs did not work. Instead, the Guippone court merely requires inquiry into whether other facilities exist. See Guippone, 681 F. Supp. 2d at 446.

Still, the Court does not disagree that the obligation to provide WARN notice depends on a number of factors, one of which is the number of non-part-time employees who work at a particular site. Here, the Court finds that Plaintiffs have

failed to allege sufficient facts supporting their claim that "mass layoffs" occurred at multiple sites of employment. Besides Pier 62 and Navy Pier, the bare allegations regarding sites in California are too tenuous to enable the Court to find that the WARN Act's notice requirements were likely triggered at those other worksites.

Plaintiffs counter that "only Hornblower knows the number of hours impacted employees worked, and the size of its workforce before it implemented mass layoffs." (Opposition at 2.) While it is true that under Twombly, a complaint need not include "detailed factual allegations," the "allegations must [still] be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Further, the Second Circuit has found that a plaintiff may "'plead[] facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant," Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotations omitted), but a reviewing court must still be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. With respect to the other sites of employment, Plaintiffs have not provided any guiding facts, beyond allegation of the total number of

layoffs, to aid this Court in making a reasonable inference that the WARN Act was violated. Given the particular calculations involved in meeting the elements of a WARN Act violation, even when viewing the pleadings in the light most favorable to Plaintiffs, the Court cannot, without more, find it plausible that either plant closings or mass layoffs took place without notice and within the requisite period of time at those other sites.

As is, Plaintiffs are not able to make out a well-pleaded claim with respect to the sites where Plaintiffs were not employed. Plaintiffs are granted leave to further amend the complaint in order to eliminate conclusory allegations that lack adequate factual bases or, alternatively, provide the factual allegations with respect to those other sites that would meet the pleading standard for a cause of action under the WARN Act. Accordingly, Defendant's motion to partially dismiss Plaintiff's complaint is **GRANTED** with leave to amend.

B. <u>MOTION TO PARTIALLY DENY CLASS CERTIFICATION</u>

Defendant also brings a motion to partially deny class certification on a preemptive basis pursuant to Rule 23(d)(1)(D), challenging Plaintiffs' putative nationwide class before they have moved for class certification. Defendant argues that the Court should preemptively strike

20

Plaintiffs' class allegations as to the sites where Plaintiffs did not work on the grounds that Plaintiffs' individual WARN Act claims cannot be common or typical of WARN Act claims of employees at other sites.

"[D]istrict courts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the [c]ourt in making this determination." Mazzola, 849 F. Supp. 2d at 410. Nevertheless, courts will preemptively strike class allegations if defendant can "demonstrate from the face of the complaint that it would be *impossible* to certify the alleged class regardless of the facts Plaintiffs may be able to obtain during discovery." Garcia, 2019 WL 689084, at *2 (emphasis added).

Defendant's argument to preemptively strike class allegations is grounded on the contention that commonality and typicality can never exist between the class representatives and employees who did not work at the sites where the representatives worked. First, Defendant asserts that WARN Act commonality cannot exist here because the notice obligation under WARN depends exclusively on the facts at that particular "single site of employment." (MOL at 2.) In

other words, Shaw and Press's claims would turn on facts
specific to their own worksites, rendering commonality
improbable. (See id. at 3.) Second, Defendant argues that
typicality is absent as the claims of the putative class
members turn on facts irrelevant to the class
representative's personal claim, which would allegedly leave
the class representative with no incentive to prove the claims
of the absent class members. (Id.)

However, as Plaintiffs counter, Defendant primarily
relies on authority decided at the class certification stage,
after a more complete factual record had been obtained, to
argue for preemptively striking class allegations. See
Stanley v. St. Croix Basic Servs., No. 2003/0055, 2008 WL
4861448 (D.V.I. Nov. 3, 2008) (finding class lacked
typicality on plaintiff's motion for class certification);
Likes v. DHL Exp., 288 F.R.D. 524, 536 (N.D. Ala. 2012)
(finding that WARN Act claims were not common or typical at
motion for class certification stage); Presser v. Key Food
Stores Coop., Inc., 316 F. App'x 9, 12 (2d Cir. 2009)
(affirming district court finding that class failed to
satisfy typicality requirement at class certification stage).

In parsing the cases that Defendant cites, the Court is
not persuaded that commonality and typicality can never exist

between the class representatives and the putative class members in the instant case. In Likes, for example, the court found that commonality was lacking because the plaintiff failed to consider that the putative class members were employed by different companies with only a contractor relationship with DHL, and the court declined to find that the class could prove single employer liability against DHL. Likes, 288 F.R.D. at 535. Likes is not on point. Here, Defendant does not challenge whether the putative class members were actually employed by Defendant. There is no indication that third-party contractors were involved or that Defendant was not the direct single employer of the putative class members.

In response, Plaintiffs also cite several cases to rebut Defendant's contention that WARN Act classes are not appropriate across multiple single sites of employment. (See Opposition at 3 (citing Grimes v. Evergreen Rec. Vehicles, LLC, No. 315 Civ. 472, 2018 WL 1257237 (N.D. Ind. Mar. 12, 2018); Ramcharan v. A.F.L. Quality, Inc., No. 12 Cv. 7551, 2014 WL 4388579 (D.N.J. Sept. 5, 2014); In re Connaught Group, Ltd., 491 B.R. 88 (S.D.N.Y. 2013)).) Specifically, Plaintiffs rely on these cases to demonstrate that courts have certified WARN classes where the putative class members were employed

23

across different facilities. Defendant counters that these cases are inapposite because the sites in question were all located within the same state or the defendant failed to raise issues of commonality or typicality, distinguishing them from the instant case which involves Defendant's facilities in *different* states and whether Plaintiffs can establish commonality and typicality. (See Reply at 3.)

Defendant also noted that as of July 29, 2022, when Defendant filed its Reply, a nationwide WARN class had not been certified. (See id.) On October 18, 2022, however, Plaintiffs filed a notice of supplemental authority (see Dkt. No. 52), bringing to the Court's attention a recently decided case in which a district court certified a nationwide WARN Class. See Jones v. Scribe Opco, Inc., No. 20 Civ. 2945, 2022 WL 7565676 (M.D. Fla. Oct. 13, 2022). Defendant filed a reply letter, countering that the case is not on point and should not be considered. (See Dkt. No. 56.)

In Jones, the district court in the Middle District of Florida certified a nationwide WARN class involving a single named plaintiff and employees at the defendant's multiple facilities in Florida and Minnesota. See Jones, 2022 WL 7565676, at *4-5. The Jones court determined that the relevant WARN Act issues were "the timing of the layoffs, the required

24

length of the notice period, and how much notice was practicable," and found that these questions as they pertain to the different facilities have common answers. Id. Thus, in Jones, commonality, along with the other requirements for class certification, was satisfied despite the court acknowledging the individualized nature of each class member's damages based on the member's rate of pay. Id. at *6.

While this Court is not required to follow the Jones decision, the presence of a certified nationwide class and other certified WARN classes that include employees of multiple sites of employment leaves open the prospect that it is indeed possible at the class certification stage for Plaintiffs in this case to establish commonality and typicality between themselves and the putative class. Defendant's objections to the Jones case do not persuade the Court otherwise.[8]

---

[8] Defendant objects to consideration of the Jones decision on the grounds that the defendant in the case only challenged the predominance factor and that the Jones court's commonality and typicality analyses failed to address the "single site of employment" issue. (Dkt. No. 56 at 3.) The Court does not find Defendant's objections persuasive considering that the analysis of the predominance factor in a motion for class certification "is even more demanding than Rule 23(a)." Comcast Corp. v. Behrend, 569 U.S. 27, 45 (2013) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623-24 (1997)).

For the reasons above, the Court declines to find that Plaintiffs' supposed deficiencies in commonality and typicality render the class "impossible" to certify. See Garcia, 2019 WL 689084, at *2. While there may be a universe in which, at the conclusion of discovery, neither common questions of law or fact nor typicality will be found to exist between Plaintiffs and employees at sites other than Pier 62 and Navy Pier, the Court is persuaded that a more complete factual record is required for it to make that determination. In this case, the Court agrees with other courts in this district which have found that "speculat[ing] as to [the] boundaries of the class" at the pleading stage without the aid of discovery is "simply too soon." Chenensky v. New York Life Ins. Co., No. 07 Civ. 11504, 2011 WL 1795305, at *4 (S.D.N.Y. Apr. 27, 2011).

To the extent that Defendant is concerned with the overbreadth of the class, the Second Circuit has determined that "[a] court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993) (citation omitted). Where classes are defined too broadly, "they may be amended either by Plaintiffs or the court at the class

26

certification stage rather than being stricken by the court pre-discovery." Andres v. Town of Wheatfield, No. 17 Civ. 0377, 2022 WL 3273891, at *3 (W.D.N.Y. Aug. 11, 2022); see also Reynolds v. Lifewatch, Inc., 136 F. Supp. 3d 503, 517-18 (S.D.N.Y. 2015) (finding that discovery will aid the court in refining the class and declining to strike plaintiff's class allegations at pleading stage).

Defendant is concerned that site-specific issues, such as whether WARN notice is due at all or whether employees received as much notice as possible, render a finding of commonality and typicality impossible (see Reply at 3), but the Court is persuaded that these issues can be adequately addressed through discovery. Thus, the Court finds that after conducting discovery, and as appropriate, the putative class definition can be further refined at the class certification stage to mend any deficiencies and better address Defendant's concerns regarding commonality and typicality.

As a motion for class certification is not before the Court at this time, the Court is not persuaded that based on the pleadings alone, the class cannot be certified. Thus, the Court holds that it is indeed premature to strike class allegations at this stage without a more complete factual

record. Accordingly, Defendant's motion to partially strike class allegations is **DENIED**.

### IV.   ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 37) of defendant Hornblower Cruises, LLC ("Defendant") to partially dismiss the Second Amended Complaint (Dkt. No. 27) filed by Plaintiffs Clyve Shaw and Kenardo Press (collectively, "Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED** with leave to amend, and it is further

**ORDERED** that the motion (Dkt. No. 37) filed by Defendant to partially deny class certification on a preemptive basis pursuant to Rule 23(d)(1)(D) of the Federal Rules of Civil Procedure is **DENIED**.


**SO ORDERED.**

Dated:    7 November 2022
          New York, New York

_____
Victor Marrero
U.S.D.J.

28